## LEE v. SHREVEPORT RYS. CO.

No. 6184.

Court of Appeal of Louisiana.
Second Circuit.

Feb. 4, 1941.

Bush & Stephens, of Shreveport, for appellant.

Wise, Randolph, Rendall & Freyer, of Shreveport, for appellee.

TALIAFERRO, Judge.

Plaintiff seeks to recover damages for physical injuries sustained by him while a paid passenger on a trackless trolley bus of defendant. He boarded the bus on Lakeshore Drive when it stopped immediately preceding a left turn into Portland Avenue. For a cause of action he alleges:

"That your petitioner boarded the trolley at this point and as he handed the conductor his ticket to pay for his ride, the conductor drove the car into the sharp curve which results from the turn the trolley makes into Portland Avenue at this point, and your petitioner was thrown by this negligent action backward into and partially through the glass door.

\* \* \*

"That the accident took place as the direct result of the gross and wanton negligence of the operator of car No. 321, in either recklessly starting the car around the curve in complete disregard of his passenger's safety, or in carelessly permitting the car to get from out of his control."

Defendant denies that plaintiff was injured through the negligence or carelessness of the operator of its bus, but through his own fault and negligence in not using the proper hand holds and safeguards placed in the trolley for his protection, and in handling himself in such a careless, negligent and awkward manner as to constitute the proximate cause of the accident. In the alternative, contributory negligence in the mentioned respects is specially pleaded as a bar to recovery. Plaintiff's demand was rejected, his suit dismissed, and he prosecutes appeal.

The bus stopped on the south side of Lakeshore Drive at the usual and customary place, immediately prior to turning into Portland Avenue, to pick up passengers. Plaintiff only got aboard. There were no other passengers on the bus. Its front end was then eighteen (18) feet from the west side of the intersection, which is a projection of the west line of Portland Avenue southerly across Lakeshore Drive.

Plaintiff handed his ticket to the motorman and requested a transfer. It was within a· split second thereafter that he fell against or was thrown against the glass panel folding doors through which he had a moment before entered. His testimony as regards the exact position of the bus at the time of and its movements immediately prior to his falling is not entirely consistent nor uniform. He alleges that as he handed the motorman his ticket, he "drove the car into the sharp curve" and that "he was thrown by this negligent action backward" into the door, and that the accident was a direct result of the motorman's gross negligence in "either recklessly starting the car around

the curve \* \* \* or in carelessly permitting the car to get from out of his control".

Plaintiff firstly testified: "When I got on the car and just as I handed the motorman the ticket, all I knowed is that I was thrown into the door." He was asked: "How soon after you got on the car would you say that the motorman started that car?" He gave the following answer: "He started the car just as I got on. He started it suddenly and started off right away. Didn't lose no time."

He says that at that time the bus was taking the curve. Again he testified:

"Q. What threw you back?· A. That turning the curve so shortly and I didn't have much chance to get on. He didn't give me a chance to enter the car and get a seat. I didn't get a chance to get my transfer or anything.

"Q. Did you ask the conductor for a transfer? A. I didn't get a chance to ask him. Just as I went to ask him all I knowed is I went into the door."

And lastly, he said:

"A. I think evidently the car must have got loose from the motorman, was all I could tell about it, after I didn't have a chance to board the car before it was gone.

"Q. It got up pretty good speed? A. Pretty good speed. It was traveling."

The motorman testified that as plaintiff handed him the ticket he requested a transfer for use on a Cedar Grove bus, which he (the motorman) wrote out and handed to him. The trolley was then started slowly forward toward the intersection. He testified that the accident happened in this manner: "He had a coat hanger on his arm. I gave him his transfer and he reached around to get his clothes off his arm and when he did so he stepped back in this well and caught ·back on his elbow in the door."

The "well" referred to is the open space fifteen (15) inches deep above the step, inside and adjacent to the doors. It is about two (2) feet long and· its upper side is flush with the floor of the bus. It is approximately three (3) feet from the motorman's seat.

The motorman is positive plaintiff fell before the bus covered the eighteen (18) feet intervening between it and the west side of the intersection; that it had not gone over ten (10) feet when the fall occurred.

Plaintiff is uncertain as to how the bus had gone when he fell, but was certain it was at that time making the curve. However, he says the bus was started up rapidly, almost simultaneously with his entry therein, and that at that time he was thrown into the door.

The motorman also testified that the bus was started after plaintiff boarded it, in the usual and customary manner, without any jerk or sudden motion; and that it could not attain a speed in excess of five (5) miles per hour within eighteen (18) feet for two reasons: The first is due to the fact that it is equipped with a "line breaker", functioning as does a governor, which makes it impossible to start the bus off at a rapid speed or attain such speed immediately after starting; and the second, that it is slightly up-grade toward the intersection. His testimony in this respect is corroborated by defendant's engineer and repair man.

Plaintiff's version of the accident is not a reasonable one in view of undisputed facts and circumstances. If he lost balance from the bus' circular movement across the intersection, it is certain it had then traveled some seconds and had covered over eighteen (18) feet, within which time and distance he should have been well on his way to a seat in the opposite end of the bus. He repeatedly testified that the bus started as soon as he boarded it. If he had fallen from a quick forward movement of the bus from stop, he would have been propelled to his left and toward the seats, not toward the doors.

The motorman's version of the accident is reasonable and plausible, all things considered. One of plaintiff's hands (plaintiff says the left one) held some clothes. The other hand probably held the transfer, after receiving which he stepped back preliminary to turning down the aisle and locating a seat. One backward step carried his foot into the well. This unbalanced him and since his left hand held the clothes, he could not utilize it in catching hold of a post in the effort to regain his balance. There was no post on his right side. In addition, the motorman testified that, in keeping with the customary rule, the bus was not started before he handed the transfer to plaintiff.

Plaintiff's assiduous counsel have provided us with an excellent brief dealing at length with the high degree of care required of a carrier with respect to the safe transit and delivery of its passengers, which we have studied with unusual interest. An array of decisions pertinent to the question is cited, quoted from and discussed. The case of Wallace against the present defendant, decided by this court and reported in 175 So. 86, 87, is especially relied upon. There, as in the present case, only the motorman and the plaintiff had personal knowledge of the accident. We said therein: "The only evidence offered to rebut plaintiff's case was that of the motorman. So far as the record discloses, they are of equal credibility. There are no conclusive circumstances in the case to unbalance the scales as regards the comparative weight of their testimony. Ordinarily, in such circumstances, a plaintiff would be held to have failed to make out his case, but not so when a breach of a contract of carriage is involved."

Defendant's counsel concede the soundness of what was held in the Wallace case in view of its own peculiar facts. A long list of cases in the jurisprudence of this state, supporting the principle therein applied, is cited. However, the situation in the Wallace case is not identical with that prevailing in the present one. It was specifically held in that case that as the credibility of the plaintiff and defendant's motorman was on equal basis, and there was no circumstance to unbalance the scales in defendant's favor, the inference of negligence flowing from the prima facie case made out by the plaintiff was not overcome. The facts here are quite different. The prima facie case, in itself weak, made out by the plaintiff, and the inference of negligence arising from proof of injury while a passenger, have been successfully rebutted by the direct, reasonable testimony of the motorman, augmented by undisputed pertinent circumstances and inconsistencies in plaintiff's own testimony.

The judgment appealed from is affirmed.